**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CONNIE H.,[1] | : | Case No. 3:23-cv-00046 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed applications for Child's Insurance Benefits and Supplemental Security Income (SSI) in June 2020. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.      BACKGROUND

Plaintiff asserts that she has been under a disability since February 1, 2008. At that time, she had not yet attained the age of twenty-two.[2] For the purposes of eligibility for SSI, she was twenty years old on the application date.[3] She was therefore considered a "younger person" under the Social Security regulations. 20 C.F.R. §§ 404.1563(c) & 416.963(c).[4] She has "a high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 35-56), Plaintiff's Statement of Errors ("SE," Doc. No. 10), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disabled Child's Insurance Benefits and SSI to individuals who are under a "disability," among other eligibility requirements.

---

[2] Social Security regulations provide for the payment of Disabled Child's Insurance Benefits if the claimant is eighteen years old or older and has a disability that began before attaining age twenty-two. *See* 20 C.F.R. § 404.350(a)(5). Thus, the relevant period of consideration for Plaintiff's Disabled Child's Insurance Benefits application begins in 2017, when Plaintiff turned age eighteen. (*See* AR, Doc. No. 7-5 at PageID 318.)

[3] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. And so the relevant period of consideration for Plaintiff's SSI application begins on June 30, 2020. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

[4] The remaining citations will identify only the pertinent Disabled Child's Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

2

*Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

4

Step 1:        Born [in] 1999, Plaintiff had not attained age twenty-two as of
               February 1, 2008, the alleged onset date.

               Plaintiff has not engaged in substantial gainful activity since the
               alleged onset date.

Step 2:        She has the severe impairments of obesity, anxiety disorder, and
               depression.

Step 3:        She does not have an impairment or combination of impairments
               that meets or equals the severity of one in the Commissioner's
               Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:        Her residual functional capacity (RFC), or the most she can do
               despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276
               F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20
               C.F.R. § 404.1567(b), subject to the following limitations: "(1) never
               climbing ladders, ropes, or scaffolds; (2) no work around hazards
               such as unprotected heights or dangerous machinery; (3) no
               operation of automotive equipment; (4) performing simple, routine,
               and repetitive tasks; (5) occasional[,] superficial contact with
               coworkers and supervisors (superficial contact is defined as able to
               receive simple instructions, ask simple questions and receive
               performance appraisals but as unable to engage in more complex
               social interactions such persuading other people or resolving
               interpersonal conflicts); (6) no public contact; (7) no teamwork or
               tandem tasks; (8) no fast-paced work; (9) no jobs which involve high
               production quotas; and (10) jobs which involve very little, if any,
               change in the job duties or the work routine from one day to the
               next."

               She has no past relevant work.

Step 5:        Considering Plaintiff's age, education, work experience, and RFC,
               there are jobs that exist in significant numbers in the national
               economy that she can perform.

(Decision, Doc. No. 7-2 at PageID 41-50.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 50.)

5

## B.     State Agency Psychological Consultants

State agency psychological consultant Kristen Haskins, Psy.D. completed a

Disability Determination Explanation form in September 2020. (AR, Doc. No. 7-3 at

PageID 97-100.) Dr. Haskins found moderate impairment in the following "B Criteria"

areas: interacting with others; concentrating, persisting, or maintaining pace; and

adapting or managing oneself. (*Id.* at PageID 98.) She found no impairment in the area of

understanding, remembering, or applying information. (*Id.*) In the mental RFC section of

the form, Dr. Haskins indicated that Plaintiff was moderately limited in the abilities of

performing activities with a schedule, maintaining regular attendance, being punctual

within customary tolerances, completing a normal workday and workweek without

interruptions from psychologically-based symptoms, and performing at a consistent pace

without an unreasonable number and length of rest periods. (*Id.* at PageID 99-100.) Dr.

Haskins otherwise found no significant limitations in the other areas of functioning that

related to sustained concentration and persistence. (*Id.*) She concluded:

> [Plaintiff] generally has good concentration [and] attention on exams but
> her anxiety can be severe at times. Anxiety symptoms would interfere with
> her ability to carry out a schedule and maintain regular attendance. She can
> carry out short cycle tasks in a setting without demands for fast pace or
> high production[.]

(*Id.* at PageID 100.)

Regarding social interactions, Dr. Haskins opined that Plaintiff was moderately

limited in the abilities of interacting appropriately with the general public, accepting

instructions from and responding appropriately to criticism from supervisors, and getting

along with coworkers or peers without distracting them or exhibiting behavioral

6

extremes. (AR, Doc. No. 7-3 at PageID 100.) Dr. Haskins opined: "[Plaintiff's] panic attacks and anxiety affect her ability to work with the general public, coworkers and supervisors. She is noted to be cooperative in most contact with physicians. She retains the capacity for occasional[,] superficial social interactions." (*Id.*)

In the final area of adaptation, Dr. Haskins opined that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting. She concluded: "[Plaintiff] is able to adapt to minor and infrequent changes in the work setting. [She] travels in [her] community, can recognize hazardous conditions in the workplace and make independent plans[.]" (AR, Doc. No. 7-3 at PageID 100.)

Vicki Warren, Ph.D., reviewed the updated record at the reconsideration level in March 2021, and essentially adopted Dr. Haskins' assessment (*Id.* at PageID 124-28.)

The ALJ concluded that the state agency psychological consultants' assessments were "partially persuasive." (Decision, Doc. No. 7-2 at PageID 42.) The ALJ explained that Plaintiff had "not been recently hospitalized for psychiatric reasons and clearly has symptoms of no more than moderate-level severity which are responsive to and stable with consistent psychological care." (*Id.*) The ALJ noted that he had incorporated the consultants' limitations into the RFC "to the extent that their limitations are consistent with the balance of the record . . . ." (*Id.*) By way of example, the ALJ cited the consultants' limitations for performing short-cycle tasks in a setting with no pace or production demands and minor, infrequent changes. (*Id.* at PageID 43.) The ALJ stated that he translated these limitations into the RFC restrictions for performing simple, routine, and repetitive tasks without fast-paced work or high production quotas in a

7

setting with very little, if any, change. (*Id.*) The ALJ explained that such restrictions are "reasonable, given that [Plaintiff] has a reduced stress tolerance as evidenced by her history of counseling to improve coping skills (see, e.g. Exhibit 1F at 10) and has been described has [sic] having an 'anxious personality' (Exhibit 17F at 4)." (*Id.*)

As for Plaintiff's social functioning, the ALJ indicated that he adopted the consultants' limitations for occasional and superficial social interactions, and he noted that these limitations were "vocationally defined." (Decision, Doc. No. 7-2 at PageID 43.) Further, the ALJ addressed the consultants' comments that Plaintiff's anxiety symptoms "would interfere with her ability to maintain regular attendance and carry out a schedule." (*Id.*) He discounted these comments because they "seem based entirely upon [Plaintiff's] subjective complaints and inconsistent with [Plaintiff's] treatment records showing moderate-level symptoms and no evidence of any episodes of decompensation that would compromise [Plaintiff's] ability to maintain regular attendance[,] particularly working competitively in a nonpublic setting." (*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred because: 1) the medical opinion evidence analysis and RFC assessment are not supported by substantial evidence; 2) the ALJ failed to comply with Social Security Ruling 16-3p when evaluating Plaintiff's symptom severity; and 3) the ALJ relied on "an improper hypothetical to the vocational expert which does not constitute substantial evidence of [Plaintiff's] vocational abilities." (SE, Doc. No. 10 at PageID 1026.) Finding error in the ALJ's analysis of the opinion

evidence, the Court does not address Plaintiff's other alleged errors and instead instructs the ALJ to address all of them on remand.

Plaintiff also contends that the Court should remand the case pursuant to Sentence Six of 42 U.S.C. § 405(g), because Plaintiff submitted new and material evidence at the Appeals Council level. (*Id.* at PageID 1026, 1043-44.) For the reasons discussed below, this assignment of error is moot.

### A. The ALJ Reversibly Erred When Evaluating the Prior Administrative Medical Findings

Plaintiff contends that the ALJ's RFC is flawed because "[t]he ALJ's determination to give partial weight to the opinions of the reviewing psychologists while rejecting the portion of their opinion concerning maintaining regular attendance and carrying out a schedule is not supported by substantial evidence." (SE, Doc. No. 10 at PageID 1039.) For the reasons discussed below, Plaintiff's assertion is well-taken.

#### 1. Applicable law.

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

9

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R.

§ 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical

opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v.

Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31,

2023).

Because they are the most important factors, the ALJ is required not only to

consider the supportability and consistency of all medical opinions in the record, but also

to "explain *how* he or she considered them."[5] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-

00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20

C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No

"specific level of detail" is required, as "the appropriate level of articulation will

necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of

Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023)

(Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or

any specific phrasing" to comply with the applicable regulations. *Id*.

> ### 2. The ALJ's supportability and consistency analyses are not supported by substantial evidence.

The ALJ explained that he was only partially persuaded by the State agency

psychological consultants' findings. (Decision, Doc. No. 7-2 at PageID 42-43.) He

reasoned that the consultants' comments that Plaintiff's "[a]nxiety symptoms would

---

[5] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

interfere with her ability to carry out a schedule and maintain regular attendance" seemed to be "based entirely upon [Plaintiff's] subjective complaints . . . ." (Decision, Doc. No. 7-2 at PageID 43.) With this statement, the ALJ arguably explained his consideration of the supportability factor as required by 20 C.F.R. § 404.1520c(c)(1). However, the ALJ's supportability analysis is not supported by substantial evidence.

The ALJ apparently failed to consider the consultants' explanation of their evaluation of Plaintiff's symptom severity. (*See* AR, Doc. No. 7-3 at PageID 99, 109.) The consultants acknowledged that Plaintiff complained of "[s]ustained concentration and persistence[-] related symptoms." (*Id.*) Critically, they also concluded that Plaintiff's statements "about the intensity, persistence, and functionally limiting effects of the symptoms" were "substantiated ***by the medical evidence alone***." (*Id.* (emphasis added).) The consultants, therefore, plainly stated that they did not base their findings entirely upon Plaintiff's subjective complaints. The ALJ's contrary conclusion is not supported by substantial evidence.

The ALJ also concluded that the consultants' statements (that Plaintiff's "[a]nxiety symptoms would interfere with her ability to carry out a schedule and maintain regular attendance") were "inconsistent with [Plaintiff's] treatment records showing moderate-level symptoms and no evidence of any episodes of decompensation that would compromise [Plaintiff's] ability to maintain regular attendance particularly working competitively in a nonpublic setting." (Decision, Doc. No. 7-2 at PageID 43.) Construing this statement as constituting the ALJ's required consistency analysis, this conclusion, too, is unsupported by substantial evidence.

12

In support of his conclusion that Plaintiff's symptoms were only "moderate-level" in severity, the ALJ asserted that Plaintiff's symptoms were "responsive to and stable with consistent psychological care." (Decision, Doc. No. 7-2 at PageID 42-43.) The ALJ acknowledged Plaintiff's diagnoses, subjective complaints, and treatment, but concluded: "Nevertheless, treatment records also demonstrate [Plaintiff's] anxiety and mood are brought under reasonable control without noticeable side effects (Exhibits 4F at 6, 12 / 5F at 1 / 6F at 1 / 11F at 1 / 12F at 1)." (*Id.* at PageID 42.) The ALJ's reliance on just these six records—out of numerous treatment notes during the relevant time period—paints a misleading picture of Plaintiff's symptoms and response to treatment. The ALJ ignored significant evidence that Plaintiff required many adjustments to her medications, and continued to exhibit and complain of significant anxiety symptoms despite these changes.

For example, Plaintiff told psychiatrist Umamaheswara Vellanki, M.D. in July and October of 2017 that her anxiety and obsessive-compulsive symptoms were improved with medication. (AR, Doc. No. 7-7 at PageID 430-31.) However she began complaining of increased anxiety in early 2018. (*Id.* at PageID 595.) She told Dr. Vellanki in March 2018 that her medications were not helping, even though she was taking them regularly. (*Id.* at PageID 428.) She also said that she was "staying up all night and sleeping all day." (*Id.*) Dr. Vellanki advised Plaintiff to taper Zoloft and start Prozac. (*Id.*) At a follow-up visit in April 2018, Plaintiff said that despite the medication changes she was continuing to experience "a lot" of anxiety, as well as some "panic feelings." (*Id.* at PageID 427.) In May 2018, Plaintiff said she had not increased her Prozac dosage as prescribed by Dr. Vellanki because she thought the medication was not helping. (*Id.* at PageID 426.) She

13

said she was still experiencing "a lot of anxiety attacks." (*Id.*) Dr. Vellanki documented an anxious mood and affect and prescribed Vistaril. (*Id.*)

Plaintiff reported that she was "more anxious" and "not doing good" at the next visit in July 2018, and Dr. Vellanki again documented an anxious mood and affect. (AR, Doc. No. 7-7 at PageID 425.) Dr. Vellanki increased Plaintiff's Vistaril dosage and added Paxil. (*Id.*) Plaintiff reported an improvement in her anxiety in August 2018. (*Id.* at PageID 424.) But this improvement was again only temporary, as Plaintiff reported chronic, uncontrolled anxiety when she saw her primary care provider in January 2019. (AR, Doc. No. 7-7 at PageID 501.) Her provider noted that Plaintiff presented as anxious and with flight of ideas. (*Id.*) She did not see Dr. Vellanki again until later that month due to being without insurance "for some time," although she had purchased medications through a prescription assistance program. (*Id.* at PageID 423.) Dr. Vellanki did not adjust Plaintiff's medications at that time. (*Id.*) But Plaintiff again presented as anxious and with flight of ideas during her next two primary care visits in February 2019. (*Id.* at PageID 483, 486.)

Records dated through April 2019 documented some improvement in Plaintiff's anxiety symptoms (*e.g.,* AR, Doc. No. 7-7 at PageID 421, 479-79), but Plaintiff reported increased anxiety in May 2019. (AR, Doc. No. 7-7 at PageID 420.) She had not adjusted her Paxil dosage as directed, and Dr. Vellanki documented an anxious mood and verbose speech. (*Id.*) Plaintiff temporarily stopped seeing Dr. Vellanki because he dropped her insurance. (*See* AR, Doc. No. 7-7 at PageID 462.) In November 2019, Plaintiff's primary

14

care provider increased her Paxil dosage in response to Plaintiff's complaints of worsened anxiety. (*Id.* at PageID 462-64.)

Nevertheless, when Plaintiff began seeing Su-Ann Newport, C.N.S. for medication management in January 2020, she still reported anxiety and panic attacks. (*Id.* at PageID 637.) Ms. Newport noted that Plaintiff exhibited an anxious and dramatic mood and affect. (*Id.* at PageID 639.) Plaintiff complained of more anxiety in March 2020, and Ms. Newport again documented an anxious mood and affect. (*Id.* at PageID 633.)

Plaintiff's primary care provider noted that Plaintiff appeared "very anxious" during visits between April and June of 2020. (AR, Doc. No. 7-7 at PageID 439, 441, 445.) A mental status examination in July 2020 showed a depressed and anxious mood and affect, and Plaintiff told Ms. Newport that she thought that a recent increase in Paxil was not helping her anxiety. (*Id.* at PageID 622-23.) In August 2020, Plaintiff asked for stronger medication to treat her anxiety and panic symptoms, although she acknowledged that she was not taking Buspirone twice per day as prescribed. (*Id.* at PageID 645, 648.) Ms. Newport noted that Plaintiff presented as anxious and sleepy. (*Id.* at PageID 646.)

At the next visit in September 2020, Plaintiff reported that she had been taking Buspirone twice per day but that she was still "very anxious." (*Id.* at PageID 650.) Plaintiff again requested stronger medication for her anxiety and panic symptoms. (*Id.*) Ms. Newport documented obsessive and compulsive thoughts, as well as a depressed, anxious, and incongruent mood and affect. (*Id.* at PageID 651-52.)

Plaintiff continued to require adjustments to her medication regimen. When Plaintiff sought treatment in the emergency department for anxiety in October 2020, she

15

said her psychiatrist had recently changed her medications. (AR, Doc. No. 7-8 at PageID 683.) Ms. Newport again adjusted Plaintiff's medications at a follow-up visit later that month. (AR, Doc. No. 7-7 a PageID 658.) In November 2020, Ms. Newport noted that Plaintiff had been doing well after the recent decrease of Plaintiff's Geodon dosage. (*Id.* at PageID 660.) Plaintiff said she had stopped taking Buspirone because she did "not think [it] worked for her." (*Id.*)

Plaintiff resumed treatment with Dr. Vellanki in January 2021, and reported that she continued to experience "a lot of anxiety." (AR, Doc. No. 7-7 at PageID 676.) In February 2021, Plaintiff reported some improvement and no mood swings, although she still experienced anxiety and panic attacks. (*Id.* at PageID 674.) Dr. Vellanki documented an anxious mood. (*Id.*)

Although Plaintiff reported improvement in March 2021, she complained of increased anxiety in May 2021. (AR, Doc. No. 7-22 at PageID 948, 950.) Dr. Vellanki therefore increased Plaintiff's Lexapro dosage. (*Id.* at PageID 949.) Plaintiff reported less anxiety in June 2021 but subsequently complained of increased symptoms between August 2021 and January 2022. (*Id.* at PageID 945, 947, 987, 989, 991.) In January 2022, Dr. Vellanki stopped Lexapro and prescribed Pristiq. (*Id.* at PageID 992.) Later that month, Plaintiff sought treatment in the emergency department on two occasions, and also sought urgent care treatment, for complaints of increasing anxiety. (AR, Doc. No. 7-22 at PageID 993, 1002, 1009.)

In sum, it is true that Plaintiff's mental status examinations showed some normal findings, such as cooperative behavior and no deficits in attention or memory, and that

records indicated that Plaintiff sometimes was doing well on medications. But on numerous other occasions, providers documented Plaintiff's subjective complaints that she was still experiencing anxiety symptoms even though she was taking her medications, and mental status examinations often showed an anxious mood and affect. The Court therefore concludes that the ALJ's summary of the evidence does not acknowledge or address a significant amount of evidence that supports Plaintiff's mental health complaints and the State agency psychological consultants' findings.

The ALJ also reasoned that the record does not document any episodes of decompensation that would compromise Plaintiff's ability to maintain regular attendance. However, the Court agrees with Plaintiff that episodes of decompensation are not required to establish difficulty with maintaining regular attendance and carrying out a schedule. (SE, Doc. No. 10 at PageID 1039.) The Court further agrees that mental health symptoms could cause an individual to be late to work, leave early, or take extra breaks, which would interfere with attendance and staying on schedule. Indeed, the consultants opined that Plaintiff's "[a]nxiety symptoms would interfere with her ability to carry out a schedule and maintain regular attendance." (AR, Doc. No. 7-3 at PageID 100.)

Moreover, the ALJ ignored significant evidence that supports this portion of the consultants' opinions. For example, Plaintiff testified at the January 2022 hearing that she had trouble maintaining attendance during prior work attempts. (AR, Doc. No. 7-2 at PageID 74.) She explained that she had worked for several employers since 2008 and was only able to maintain employment for short periods of time, because she had to take breaks and leave early due to anxiety symptoms:

17

> My first day on the job, I'll have to take a break and like go to the bathroom and stop myself from a panic attack. Like every day I go in there, like I had a job for a couple days, I couldn't go back because I just panic the whole time. So, like I couldn't breathe, so I needed to just calm down and actually left early because of a panic attack.

(*Id.*)

Plaintiff's testimony is substantiated by her earnings record, which shows approximately sixteen work attempts with fourteen different employers between 2016 and 2019. (AR, Doc. No. 7-5 at PageID 333-34.) With the exception of one job where she earned just over $1,000 in 2017, she earned less than $500 (and sometimes earned under $100) at each job. (*Id.*) The number of employers that she attempted to work for during this three-year time period and the amount of money that she earned at each job supports her testimony that she did not remain employed at any of these jobs for very long.

The ALJ acknowledged Plaintiff's work history. (Decision, Doc. No. 7-2 at PageID 41.) He also acknowledged Plaintiff's testimony that "panic attacks . . . have also limited her ability to maintain attendance at various jobs since the alleged onset date." (*Id.*) However, the ALJ ignored this evidence when evaluating the consultants' findings and in his RFC analysis. (Decision, Doc. No. 7-2 at PageID 42-43, 46-49.) He also ignored Plaintiff's reported difficulties with holding a job, instead stating that she "has never been terminated from a job because of problems getting along with others and reportedly gets along 'great' with authority figures (Exhibit 3E)." (*Id.* at PageID 43.) Additionally, he reasoned that "[Plaintiff] also has shown clear indicators of her ability to adapt through . . . seeking employment." (*Id.* at PageID 44.) This conclusion is plainly

18

inconsistent with the overall evidence of Plaintiff's employment history that includes approximately sixteen short-term work attempts between 2016 and 2019.

In sum, the Court concludes that the ALJ erred by failing to acknowledge or address significant evidence that supports Plaintiff's mental health complaints. The Court recognizes that the ALJ need not discuss each and every piece of evidence and finding in the record. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show he "implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's failure to acknowledge the ongoing difficulties that Plaintiff experienced while providers made changes to her medication regimen, as well as Plaintiff's well-documented difficulties holding a job due to her anxiety, shows that the ALJ did not resolve the conflicts in the evidence. In addition, the ALJ's apparent failure to consider significant evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis)); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports").

For these reasons, the Court concludes that the ALJ's factual findings regarding the supportability and consistency factors are not supported by substantial evidence.

### B. The ALJ's Error Is Not Harmless

Defendant argues that any error in the ALJ's evaluation of the consultants' findings is harmless. (Mem. In. Opp., Doc. No. 11 at PageID 1056-57.) According to Defendant, the consultants' statement that "[a]nxiety symptoms would interfere with [Plaintiff's] ability to carry out a schedule and maintain regular attendance" is "incredibly vague" and does "not propose any specific work restrictions . . . like explaining how often she may miss work or what percentage of the day she may be off task." (*Id.* at PageID 1056.) This argument is not well-taken.

As discussed above, the ALJ's factual findings regarding Plaintiff's mental impairments are not supported by substantial evidence. An ALJ's error cannot be excused as harmless if it prejudices the claimant on the merits or deprives her of substantial rights. *Rabbers*, 582 F.3d at 654. Here, the Court finds that the ALJ's error was not harmless because it prejudiced Plaintiff on the merits. Therefore, reversal and remand is warranted.

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Social Security Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may also be warranted when new and material evidence is presented and there is "reasonable probability" that the ALJ would have rendered a differing decision if presented with the new evidence. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

### A. A Sentence Four Remand Is Warranted

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the State agency psychological consultants' findings and Plaintiff's treatment and employment history, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Child's Insurance Benefits and SSI should be granted.

**B.      Plaintiff's Request For A Sentence Six Remand Is Moot**

Pursuant to Sentence Six of 42 U.S.C. § 405(g), the Court has the authority to "remand the case for further administrative proceedings in light of the new evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan,* 2 F.3d 692, 695-96 (6th Cir. 1993)).  Evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). Such evidence is "material" only if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* Further, a claimant shows "good cause" by demonstrating "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* Plaintiff bears the burden of demonstrating that a Sentence Six remand is appropriate. *Id.; see also Allen v. Comm'r of Soc. Sec.* 561 F.3d 646, 653 (6th Cir. 2009).

Plaintiff contends that a Sentence Six remand is warranted because she obtained a medical opinion form from treating psychiatrist Dr. Vellanki after the hearing. (SE, Doc. No. 10 at PageID 1044.) Plaintiff asserts that the opinion evidence is new and material, and that she had good cause for not obtaining the evidence prior to the hearing. (*Id.* at PageID 1044-45.)

The Court need not address whether a Sentence Six remand is warranted, because the additional evidence will be reviewed under a Sentence Four remand, just as it would

22

be under a Sentence Six remand. Once a Sentence Four remand is granted, "[t]he Commissioner should consider all of the relevant evidence . . . ." *Bunn v. Comm'r of Soc. Sec.*, No. 6:12-CV-1479-ORL-22KRS, 2013 U.S. Dist. LEXIS 185202, at *16 (M.D. Fla. Feb. 19, 2014). Therefore, the Court's decision to remand the case under Sentence Four renders moot Plaintiff's request for a Sentence Six remand. *See Brock v. Astrue*, No. 3:10-cv-179, 2011 U.S. Dist. LEXIS 69200, at *18 (S.D. Ohio June 28, 2011) (Black, D.J.); *Yager v. Astrue*, No. 2:08-cv-1078, 2009 U.S. Dist. LEXIS 121995, at *14 (S.D. Ohio Dec. 4, 2009) (Kemp, M.J.), *report and recommendation adopted,* No. 2:08-cv-1078, 2010 U.S. Dist. LEXIS 535 (S.D. Ohio Jan. 5, 2010) (Frost, D.J.).


**IT IS THEREFORE ORDERED THAT**:

1.  Plaintiff's Statement of Errors (Doc. No. 10) is GRANTED;

2.  The Court REVERSES the Commissioner's non-disability determination;

3.  No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.  This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.  The case is terminated on the Court's docket.


*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge